Mauricio Cardona
Davillier Law Group LLC
414 Church Street, Suite 106
Sandpoint, ID 83864
Tel: 208-920-6140
Idaho Bar No. 10748
mcardona@davillierlawgroup.com

W. Scott McCollough
McCollough Law Firm, P.C.
2290 Gatlin Creek Rd.
Dripping Springs, TX 78620
Tel: (512) 888-1112
Fax: (512) 692-2522
Texas Bar No. 13434100
*wsmc@dotlaw.biz*
*(Pro Hac Vice pending)*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF IDAHO – SOUTHERN DIVISION

| | |
|---|---|
| HENRY ALLEN, | ) Case Number: 1:23-cv-559 |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DECLARATORY** |
| | ) **AND INJUNCTIVE RELIEF, AND FOR** |
| v. | ) **DAMAGES** |
| | ) |
| | ) **42 U.S.C. §§ 12181** *et seq.* **(Title III of The** |
| HORIZON TOWER LIMITED | ) **Americans with Disabilities Act)** |
| PARTNERSHIP-II; HORIZON TOWER, LLC; | ) |
| CELLCO PARTNERSHIP dba VERIZON | ) |
| WIRELESS; DISH WIRELESS, LLC; AT&T | ) |
| WIRELESS; and DOES 1 through 10 inclusive; | ) |
| | ) |
| Defendants. | ) |
| | ) |

**Introduction**

1.      Plaintiff Henry "Hank" Allen ("Plaintiff") is disabled. Exposure to radiofrequency radiation ("RF") causes, among other symptoms, atrial tachyarrhythmias, tinnitus, extreme fatigue, impaired memory and vision, sleep disruption, and flu-like symptoms.

2.      To manage his symptoms, Plaintiff moved to Eagle, Idaho to reduce his exposure to RF, and has invested in numerous RF mitigation measures in his home.

3.      After Defendants opened a wireless transmitting facility less than a thousand yards from Plaintiff's home, however, Plaintiff experienced and continues to experience ongoing severe symptoms, most significantly cardiac injury.

4.      Defendants could easily and with minimal cost take readily achievable action that would end these debilitating symptoms and permit Plaintiff to fully enjoy the use of Defendants' telecommunications services, but they have refused to do so, despite Plaintiff's request for reasonable accommodations and/or modifications to their standards, criteria, methods of administration, policies, practices, procedures, and/or commercial facilities (hereinafter "accommodation/modification").

5.      Plaintiff has tailored his request for reasonable accommodation/modification in a manner that would allow Defendants to remain compliant with their obligations and requirements under federal communications laws and regulations and without fundamentally altering the nature of the Defendants' goods, services, facilities, privileges, advantages, or accommodations.

6.      Defendants nonetheless insist that they owe no duty to Plaintiff and have refused to consider any accommodation/modification.

7.      Plaintiff asks this Court to find Defendants liable under the Americans with Disabilities Act for discrimination and this failure to accommodate his disability.

8.      The Courts of Appeals are split on whether the statutory reference to a "place" in the definition of "public accommodation" refers to an actual physical structure or whether Congress had a broader intent to make goods, services, privileges, and advantages available to disabled members of society even if only delivered "virtually." The Defendants meet even the

Ninth Circuit's more limited view that the goods and services provided by a public accommodation must have a "sufficient nexus" to a physical "place."

9.      Here, there are physical structures and facilities without which no services could be provided.[1] Defendants do not just have a website that customers virtually "visit" using the internet. Horizon Tower Limited Partnership-II and Horizon Tower, LLC own and operate towers that support network elements,[2] and other equipment owned and operated by them or Defendants Cellco Partnership dba Verizon Wireless, Dish Wireless, LLC, and AT&T Wireless (collectively "Telecom Service Providers" or "TSPs"). Defendants collectively create a physical "place": the network, over which the TSPs provide their services. Customers physically access this network: they use their own equipment, such as smartphones or other devices, to establish a physical and logical connection to the TSPs' physical network. Informational content is exchanged between the customer's device and the network using physical energy, in the form of radiofrequency radiation. Customers enter the network, much as a customer would walk through a door to obtain and use a more traditional service, go to a "motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment," or a "museum, library, gallery, or other place of public display or collection," a "park, zoo, amusement park, or other place of recreation" or an "auditorium, convention center, lecture hall, or other place of public gathering."[3] The network is not just "virtual" in the same way a website and the user exchange information using the Internet protocol through applications running on a device; rather, the Defendant TSPs provide the physical access network for reaching these other services.

10.      If and to the extent the Court disagrees and determines that wireless network access service is akin to a website, it is appropriate for the courts to reconsider the Ninth Circuit's position

---

[1] *See* 28 CFR 36.104 (definition of "Facility"). *See also* 47 U.S.C. §§ 1001-1008, 1455 (references to telecommunications and "information service" "facilities"), 1504(2) (definition of "Broadband infrastructure"); 47 C.F.R. §§ 1.6002 and 1.6100 (repeated reference to wireless "facility" or "facilities").

[2] *See* 47 U.S.C. § 153(35); 47 CFR 51.5 (definition of "Network element").

[3] *See* 28 C.F.R. § 36.104 (3), (4), (8), (9).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

requiring a sufficient nexus to a physical place in light of the increasing impossibility of conducting commerce and enjoying modern life without access to Defendants' communications services.

**Parties**

11.     Plaintiff Henry "Hank" Allen is an individual residing with his family in a single-family home located at 687 W. Rush Court, Eagle, Idaho 83616 ("Residence" or "Home").

12.     Defendants Horizon Tower Limited Partnership-II and Horizon Tower, LLC (collectively "Horizon") are entities based in California and doing business in Idaho. Horizon leases the land located at 2557 N. Sky View Lane, Ada County, Idaho ("Tower Site"). For commercial purposes, Horizon owns and operates the supporting structure for personal wireless services facilities ("Tower") at Tower Site, and hosts Defendant Verizon's antennas and related RF transmitting and processing equipment ("Antennas").

13.     Defendant Cellco Partnership dba Verizon Wireless ("Verizon") is a business entity based in Delaware and doing business in multiple states, including Idaho.

14.     Defendant Dish Wireless, LLC ("Dish Wireless") is a limited liability company based in Colorado and doing business in multiple states, including Idaho.

15.     Defendant AT&T Wireless ("AT&T") is a business entity based in Texas and doing business in multiple states, including Idaho.

16.     Collectively, Verizon, Dish Wireless, and AT&T are referred to herein as "Telecom Service Providers" or "TSPs." The TSPs each own and operate a wireless transmitting facility, including Antennas, at the Tower Site.[4] At both the Tower Site and in various locations offsite, each TSP owns, licenses, and operates software and equipment to manipulate and control RF in order to process and transmit voice and non-voice data or information "by radio." Each TSP also owns a nationwide core network—a collection of network hardware, devices, and software that

---

[4] Through counsel, Defendant Dish Wireless stated via letter dated September 22, 2023, that "DISH will install the DISH site in the future" and "DISH has no future obligation to accommodate Mr. Allen's alleged disability." Therefore, Plaintiff's allegations herein against Defendant Dish Wireless are on the basis of imminent, concrete, and particularized injury.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

supports and controls the communications services that the TSP provides. These are generally switches and routers and other computing devices. These core network capabilities also offer some of the technical means by which the accommodation/modification sought here can be accomplished without substantial cost or fundamental alteration.

17.     DOES 1 through 10 are individuals and entities whose true names are unknown to Plaintiff at this time. Plaintiff will seek leave of this Court to amend their true names and capacities when they have been ascertained.

## Jurisdiction and Venue

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). For declaratory relief and other relief requested, this Court has additional remedial authority under 28 U.S.C. §§ 2201(a) and 2202, together with 42 U.S.C. §§ 12188, 2000a-3, and 3613.

19.     Venue is proper in the District of Idaho under 28 U.S.C § 1391 and Local Rule 3.1. Diversity of citizenship is present. The District of Idaho is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

20.     Plaintiff has standing to bring this claim for declaratory and injunctive relief because he has suffered actual and threatened injury to his health and his legal rights, which can fairly be redressed by a favorable decision. There exists an actual and justiciable controversy between Plaintiff and Defendants requiring resolution by this Court. Plaintiff has no other adequate remedy at law. Plaintiff has subscribed to wireless service, and still does. He has a current account with Verizon but cannot use it except in emergency situations, because when he tries to use the service his condition is worsened.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

**Plaintiff's Disability**

21.     Beginning in approximately 2014, while residing in California, Plaintiff began to experience a host of symptoms. He consulted physicians and was advised the symptoms arose from exposure to RF. They were severe enough to cause disability since the symptoms adversely affected his ability to continue living and working at locations permeated with RF, including for example limiting Plaintiff's profession as a California general contractor building residential homes at jobsites where there was significant RF radiation.

22.     In 2017, Plaintiff and his family moved to a small farm in rural Eagle, Idaho. To protect his health and livelihood, Plaintiff selected a location approximately two miles away from any wireless tower. Plaintiff hardwired his home with network cabling and limited wireless devices in the home. By these proactive measures to avoid RF exposure, and by changing his career from licensed general contractor to licensed real estate broker, Plaintiff was able to successfully live and work normally from home despite his disability.

23.     Plaintiff's health recovered after completing the move and lifestyle changes that limited RF in his environment.

24.     Plaintiff's health took a dramatic downturn shortly after Defendants first turned on their new Tower and Verizon Antennas approximately 660 yards from Plaintiff's home. On April 11, 2021, shortly after Defendants turned on the Tower and Antennas, Plaintiff suffered atrial fibrillation and was taken to the emergency room. Plaintiff was unsure whether he would live. A physician performed an echocardiogram, full blood panel, cardioversion, and administered IV drugs to slow Plaintiff's heart rate.

25.     Two days later, Plaintiff suffered atrial fibrillation again, and at all times thereafter his health has been directly and adversely affected by the transmitters operating on the Tower. In March 2022, Plaintiff required an invasive ablation procedure to treat recurrent atrial fibrillation and flutter.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

26.     Since 2022, the TSPs added additional Antennas to the Tower. These too now also trigger severe and potentially life-threatening symptoms and cardiac events related to Plaintiff's disability in his recurring and ongoing handicap.

27.     As of this filing in 2023, Plaintiff has suffered atrial fibrillation more than fifteen times as a result of his proximity to the Tower and Antennas. In his own home, Plaintiff lives and works in constant fear for his health and his very life, because Defendants' RF is ongoing, repeated, and continuing, and Defendants refuse to recognize the federal disability laws that would solve the conflict.

28.     Plaintiff's physicians have encouraged Plaintiff to be aware of his disability, and to proactively avoid RF. Plaintiff has followed his physicians' advice to the best of his ability. Plaintiff has proffered supporting evidence to Defendants and requested in writing that Defendants engage in a reasonable accommodation/modification dialogue, but Defendants have refused to engage in any substantive good faith interactive process (i.e., Defendants refuse to accept Plaintiff's disabled status, deny responsibility, and refuse to meaningfully assess the technical feasibility of an accommodation/modification).

29.     Plaintiff has exhausted all available self-help options available to him, including for example painting his house with RF blocking paint, utilizing wire screens, shielding the windows with RF blocking tint, and wearing special clothing that blocks RF.

30.     Plaintiff has been deprived of the full use of his real and personal property because of the RF emanating from the transmitting equipment on the Tower. He can no longer enjoy his homestead because he is virtually house-bound. Plaintiff is effectively restrained from the normal activities of life, even in his own curtilage.

31.     The RF emitted by the transmitting equipment on the Tower threatens Plaintiff's life. His condition is such that he may die as a result of the next cardiac event caused from RF exposure.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

32.     Plaintiff and his family have established themselves in Eagle, Idaho and cannot readily sell their farm and move *again* to another rural location far from an RF transmitting facility. Plaintiff considers this lawsuit his last hope for a remedy.

**Tower History**

33.     In 2018, an appointed planning commission within Ada County granted the Horizon Defendants a conditional use permit to construct the Tower.

34.     In 2019, after hearing from local residents, and recognizing there was no gap in local communications coverage,[5] the elected representatives of Ada County overruled the commission and voted to deny Horizon's application for a conditional use permit.

35.     The Tower was extremely unpopular in the Eagle, Idaho community, which already had extensive wired broadband coverage (i.e., high speed internet) that does not depend on the Tower or Antennas. Indeed, with public funds the City purchased tractors, equipment, and fiber optics to install this popular wired broadband infrastructure that City residents enjoyed daily.

36.     The Tower and Antennas were unnecessary for personal wireless service—the equipment is primarily for private mobile data service, such as wireless-based video streaming— which is more lucrative than video delivery on a wired basis but also far less efficient and more destructive. The community of Eagle, Idaho, including the Mayor and the County Commissioners, did not want, and did not need, this tower.

37.     Horizon appealed, and the County chose to settle the dispute by reinstating the original grant of conditional use permit. *See* Consent Order and Judgment in *Horizon v. Ada County*, No. 1:19-cv-00125-DCN (D. Idaho Nov. 7, 2019).

38.     The Tower and its first Antennas were constructed between 2020 and 2021, and RF began transmitting from the Tower Site on approximately March 24-31, 2021, according to local

---

[5] *See*, *e.g.*, Ada County Commissioners (February 6, 2019). In Re Application of Stanley J. Tharp c/o Eberle Berlin Law Firm, Project No. 201801311 A, *Findings of Fact, Conclusions of Law and Order.*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

utility provider Idaho Power. Plaintiff began to experience the above-described symptoms soon thereafter.

## Cause of Action

## Title III of The Americans with Disabilities Act

## 42 U.S.C. §§ 12181 *et seq.*

39. The allegations contained in the previous paragraphs are repeated and incorporated as though fully set forth herein.

40. Plaintiff is an ADA covered individual with a disability, pursuant to 42 U.S.C. § 12102 and 28 C.F.R. § 36.105. Plaintiff's physical impairment substantially limits major life activities, including but not limited to standing, breathing, thinking, and working.

41. Plaintiff has medical records of the impairment showing the injurious disruption of multiple bodily systems and functions, including but not limited to severe cardiovascular complications. Plaintiff's disability presents in both intermittent acute (i.e., atrial fibrillation, tinnitus, extreme fatigue) and more recurring (i.e., fatigue, tingling in the hands, difficulty concentrating, changes in vision, and sleep disruption) forms.

42. The Horizon Defendants and their Tower that hosts the TSP facilities are "commercial facilities" pursuant to 42 U.S.C. §12181(2) and 28 C.F.R. § 36.104. The Horizon Defendants are therefore subject to 28 C.F.R. Subpart D.

43. Because the Horizon Defendants lease space on the tower to the TSP Defendants and (as explained below) the TSPs are public accommodations, the Horizon Defendants are also "public accommodations."[6] Therefore, the Horizon Defendants are also subject to 28 C.F.R. Subpart B and C.

---

[6] *See* Department of Justice, Americans with Disabilities Act, *ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities,* III–1.2000, available at http://www.ada.gov/taman3.html. (ADA Technical Manual) (Discussing landlord/tenant classification and relative duties.)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

44.     Through its leases with the TSPs, Horizon is required to place operations and other legal restrictions on the TSPs, such that the Horizon Defendants are essential parties to ensure ADA compliance by the current TSPs as well as any future TSPs that may come and go with the market in which Horizon operates.

45.     Each TSP as an entity constitutes a "public accommodation," as defined in 42 U.S.C. §12181(7). Its activities and operations make it a "place of public accommodation" under 28 C.F.R. § 36.104. *See also* 28 CFR Ch. I, Pt. 36. Each TSP is therefore subject to 28 C.F.R. Subpart B, C, and D with respect to its operations of a place of public accommodation.

   a.  Each TSP operates a physical network and offer goods and services.

   b.  Each TSP operates a "place of exhibition and entertainment," "place of recreation," "place of public gathering," "sales or rental establishment," and "service establishment." 42 U.S.C. §12181(7)(C), (D), (F), (I). Congress provided flexibility to "keep pace with the rapidly changing technology of the times." H.R. Rep. 101-485 (II), at 108 (1990).

   c.  The DOJ rules note that "the category of sales or rental establishments would include an innumerable array of facilities that would sweep far beyond the few examples given in the regulation.[7]

   d.  Each TSP also and separately owns and operates commercial facilities.

46.     Defendants have shown deliberate indifference to Plaintiff's rights under the ADA.

47.     Plaintiff's injuries as alleged herein are proximately caused by Defendants' unlawful discrimination, due to their discrimination against Plaintiff on the basis of his pre-existing disability.

48.     Plaintiff seeks relief to end the discrimination, whether characterized as a modification or accommodation.[8]

---

[7] 28 C.F.R. Part 36, Appendix C (Guidance).

[8]*See* 42 U.S.C. § 12182(a) ("General rule. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

49.     Plaintiff   further   invokes   the   general   prohibition   under   42   U.S.C. §12182(b)(1)(A)(i)-(iii)[9] because:

a.  Per section (i), Plaintiff is denied the right to participate in the benefits afforded by Defendants' services on the basis of Plaintiff's disability. For example, Plaintiff subscribes to but cannot use TSP services because it severely exacerbates his disability. If Defendants remove their discrimination against Plaintiff, then Plaintiff could fully use the service in the same way as non-disabled customers.

b.  Per section (ii), Plaintiff does not receive the same privileges, advantages, and accommodations as those who are not made ill from the services. For example, if Defendants accommodate Plaintiff's disability, then Plaintiff would have access to (1) the same privilege of wireless service coverage on demand, (2) the same advantage of enjoying the places of exhibition and entertainment, recreation, sales, service, video delivery, and the like that attend wireless service as a public accommodation.

c.  Per section (iii), those who are not made ill receive a separate benefit not accorded to the disabled, *to wit*, use without illness. For example, if Defendants remove their

advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.")

[9] 42 U.S.C. § 12182(b)(1)(A), "(i) Denial of participation. It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (ii) Participation in unequal benefit. It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. (iii) Separate benefit. It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.")

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

discrimination against Plaintiff, then (1) Plaintiff can access family plan wireless

services that grant the full suite of public accommodation services without suffering

symptoms or illness, and (2) Plaintiff can access on equal footing the suite of public

accommodation services available to customers who are not physically injured by

the services, including but not limited to online community services providing a

"place of public gathering."[10]

50.     42 U.S.C. § 12182(b)(2)(A) prohibits Defendants from discriminating against

Plaintiff as follows:

**(2)** Specific prohibitions. **(A)** Discrimination. For purposes of subsection (a), discrimination includes—

**…**

**(ii)** a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

**(iii)** a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

**(iv)** a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

---

[10] *See e.g.*, Verizon (2023). *Verizon Community*, available at https://community.verizon.com/ ("The Verizon Community is a peer to peer support community where customers can post questions and learn from each other by sharing solutions. The Community also provides a place for members to search for information and discuss other topics of interest.").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

**(v)** where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

*See also* 28 C.F.R. §§ 36.201, 202, 204.

51.     Plaintiff therefore seeks accommodation/modification because:

a.   At present Plaintiff cannot use Defendants' goods, services, facilities, privileges, advantages, or accommodations because doing so triggers severe and potentially life-threatening symptoms. Per (b)(1)(A)(i), Defendants can make reasonable modifications to the policies, practices, and procedures so that Plaintiff can have the opportunity to benefit from Defendants' goods, services, facilities, privileges, advantages, or accommodations.

b.   Per (b)(1)(A)(ii) and (b)(2)(A)(ii), Defendants can make reasonable modifications to their policies, practices, and procedures that do not elicit Plaintiff's severe and potentially life-threatening symptoms without fundamentally altering the nature of said policies, practices, or procedures. Defendants can utilize their existing technological capabilities to sufficiently reduce the RF exposures at Plaintiff's residence without significantly affecting services to others and while making their services usable by Plaintiff.[11] If the Defendants had engaged in a substantive good faith interactive process, the parties could have discussed many practically feasible options to modify without materially reducing Defendants' ability to provide

---

[11] This reasonable accommodation ensures that Verizon can still meet its obligations to provide services to third parties (i.e., first responders, utility providers) accessing the Residence, even though first responders and utility providers already enjoyed sufficient access to necessary communications (i.e., GPS, radio communications) sufficient for service without the Tower and Antennas. Nor are Plaintiff's proposed accommodations violative of the Communications Act, FCC guidelines, or any pre-existing commitments (i.e., Terms of Service) owed to third parties. Nothing in the Communications Act or FCC guidelines require that any Defendant irradiate Plaintiff's Home, nor do they prohibit the requested accommodation under the co-equal ADA statute and the Justice Department's implementing rules and guidelines, which stand on equal stead with the FCC's regulations.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

service to the rest of the public, such as reorienting antennas and/or taking advantage of newer antennas' ability to beamform.

c.  Per (b)(1)(A)(iii) and (b)(2)(A)(iii), Defendants must take steps to ensure Plaintiff is not excluded, denied services, *or otherwise treated differently than other individuals*,[12] and Defendants can take steps to do so that do not fundamentally alter the nature of their services. For example, if Defendants cease their discrimination against Plaintiff, then Plaintiff can utilize TSP services in such a manner that will comply with his physicians' advice to limit RF exposure.

d.  Per (b)(1)(A)(iv) and (b)(2)(A)(iv), Defendants must take steps to remove architectural barriers[13] in the Tower and Antennas, and communication barriers that are structural in nature, in existing facilities, where such removal is readily achievable.[14] For example, each TSP's network and beamforming equipment is sufficiently technologically advanced to allow each TSPs to easily modify the output of some of their transmitters to prevent the significant beaming of RF directly at Plaintiff's home through technically and economically feasible actions. They, in conjunction with Horizon, can manually or remotely reorient antenna

---

[12] Whereas the (b)(1)(A)(i)-(iii) duties only apply to those who seek to be clients or customers, that limitation *does not apply* to (a) or (b)(2)(A)(ii) and (iii). So, a public accommodation can illegally discriminate against even those who do not affirmatively seek access to the good or service. *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1333-34 (11th Cir. 2013), *citing, inter alia*, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 679, 121 S. Ct. 1879, 1891, 149 L. Ed. 2d 904 (2001) (noting that §12182(b)(1)(A)(iv) "is not literally applicable to Title III's general rule prohibiting discrimination against disabled individuals" and holding that "Title III's broad general rule contains no express 'clients or customers' limitation, §12182(a), and §12182(b)(1)(A)(iv) provides that its limitation is only '[f]or purposes of' the clauses in that separate subparagraph.").

[13] The architectural design of a tower and its transmitting equipment is one of the factors that leads to the manifestation of Plaintiff's symptoms. To take a single example, when a tower and its antennas are designed, one aspect is the orientation of the antennas (up and down/left and right). These can be adjusted in ways that significantly reduce the amount of energy beamed at a specific physical location.

[14] If the barrier removable is not readily achievable then the Defendants must provide access through other means, even if they are not the most integrated settings appropriate. ADA Technical Manual III-3.100.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

orientation and directionality. It is entirely possible to address Plaintiff's disability without substantial increased costs in relation to the conduct of any Defendant's particular business or fundamentally altering the nature of its services. Simple technical adjustments can be made to the equipment or its operation so that Plaintiff is not subjected to debilitating radiation. Defendants' Tower and Antennas erect a "barrier" to accessing the service and even enjoying a peaceful, safe home environment. The DOJ rules make clear that if "barrier removal is not readily achievable" the public accommodation must still make the "goods, services, facilities, privileges, advantages, or accommodations available through alternative methods, if those methods are readily achievable."[15] Plaintiff contends they are.

52.     Consistent with 28 C.F.R. Part 36, the accommodation/modification requested herein to avoid recklessly injuring the disabled are "readily achievable" and would not impose an "undue burden." Plaintiff's request for "reasonable modifications" will not "fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered [nor] would result in an undue burden, i.e., significant difficulty or expense."

53.     If Plaintiff attempted to engage in self-defense by deploying a RF-defeating device at his own Residence (i.e., jamming device or giant wall) to interfere with Defendant's delivery of RF to others in the community, Plaintiff would be at risk of a claim *by Defendants* for interference,[16] trespass, nuisance, or harm to personal property. The RF (that is, the right to employ it) is at least notionally Defendants' intangible personal property since Defendants have FCC Radio Station Authorization to emit the energy.[17] This emphasizes that federal disability law is necessary, and the last hope for a remedy, to restore balance to the parties' positions.

54.     It is a maxim of jurisprudence that for every wrong there is a remedy. The ADA provides the remedy here. As Defendants' technological power and capability grows ever more

---

[15] 28 C.F.R. §36.305(a).

[16] *See* 47 U.S.C. § 302a, 47 C.F.R. §§15.3(m), 15.5(c).

[17] *See* 47 U.S.C. §§ 301, 318.

- 15 -
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

infiltrating, legal vigilance is the remedy to protect the innocent. Plaintiff has done his part to protect himself as much as he can. Jurisprudence must do its part to ensure profits are earned fairly in respect of *all* applicable federal laws.

55.     Defendants' willful failure to engage in a meaningful interactive accommodation process, and Defendants' refusal to accommodate Plaintiff's disability in plain disregard of his rights, both constitute unlawful discrimination within the meaning of the ADA.

56.     Plaintiff is entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205.[18]

    a.  Plaintiff requests a declaratory judgment that (1) Title III of the ADA applies to Defendants' operation of the Tower and Antennas at Tower Site when transmitting RF throughout the community including Plaintiff's Home, (2) Defendants' acts and omissions in declining to engage in a substantive good faith interactive process, and refusal to accommodate Plaintiff's disability, violated the ADA, and (3) Plaintiff is entitled to a remedy that will allow the disabled Plaintiff to access the public accommodation services without being injured by the services.

    b.  For injunctive relief, Plaintiff's first request, as a means to end the discrimination, is for relocation of the Tower and Antennas to a new location that is reasonably calculated to avoid injuring the disabled population. But if such request is disallowed, then Plaintiff's request is for Defendants to utilize their existing technological capabilities to eliminate or adequately reduce the amount of RF energy directed at Plaintiff's Home and body.

---

[18] 42 U.S.C. §12188(a)(1) allows Plaintiff as a private party subjected to Title III discrimination to receive remedies under § 204(a) of the federal Civil Rights Act of 1964 (Civil Rights Act), 42 U.S.C. §2000a-3(a), including declaratory and injunctive relief, and an award of reasonable attorney's fees. *See* 42 U.S.C. § 2000a-3(b).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

**Request for Relief**

For the foregoing reasons, Plaintiff requests the Court issue judgment as follows, under the ADA, 42 U.S.C. § 12205, and the Civil Rights Act of 1964, 42 U.S.C. §2000a-3(a):

a. That this Court issue a declaratory judgment that (1) Title III of the ADA applies to Defendants' operation of the Tower and Antennas at Tower Site when transmitting RF throughout the community including Plaintiff's Home and body; (2) Defendants' acts and omissions in declining to engage in a substantive good faith interactive process, and refusal to accommodate Plaintiff's disability, violated the ADA; (3) Plaintiff is entitled to a remedy that will allow the disabled Plaintiff to access the public accommodation services without being substantially injured by the services; and (4) Defendants' actions and omissions in discriminating against Plaintiff have violated the ADA by the:

   1. denial and discrimination in public accommodation under 42 U.S.C. §12182(b)(1)(A(i)-(iii) after the disabled Plaintiff reasonably requested access to Defendants' services; and

   2. discrimination in public accommodation under 42 U.S.C. §12182(b)(2)(A)(ii) and (iii) regardless of whether the disabled Plaintiff seeks access for himself to Defendants' services.

b. That this Court issue injunctive relief to end Defendants' discrimination against Plaintiff by relocating the Tower and Antennas to a new location that is reasonably calculated to avoid injuring the disabled population, or, in the alternative, requiring Defendants to utilize their existing technological capabilities to adequately reduce the amount of RF energy directed at Plaintiff's Home and body.

c. That this Court enjoin Defendants under 42 U.S.C. §12182(b)(1)(A)(i)-(iii) from further denial and discrimination toward Plaintiff in his reasonable request for access to Defendants' services, and requiring Defendants promptly accommodate Plaintiff's reasonable request for reasonable accommodations and/or modifications,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES

without substantial cost or fundamental alteration, to Defendants' Antennas and

operations in a manner that would allow Defendants to still comply with their

obligations and requirements under federal communications laws and regulations.

d.  That this Court enjoin Defendants under 42 U.S.C. §12182(b)(2)(A)(ii) and (iii),

from further discrimination.

## Request for Jury Trial

Plaintiff requests a trial by jury for the issues a jury properly may decide and for the

requested relief that a jury may award.

Dated: December 12, 2023                     Respectfully Submitted,


                                             /s/ Mauricio Cardona___
                                             Mauricio Cardona
                                             Davillier Law Group LLC
                                             414 Church Street, Suite 308
                                             Sandpoint, ID 83864
                                             Tel: 208-920-6140
                                             Idaho Bar No. 10748
                                             mcardona@davillierlawgroup.com

                                             W. Scott McCollough
                                             McCollough Law Firm, P.C.
                                             2290 Gatlin Creek Rd.
                                             Dripping Springs, TX 78620
                                             Tel: (512) 888-1112
                                             Fax: (512) 692-2522
                                             Texas Bar No. 13434100
                                             *wsmc@dotlaw.biz*
                                             *(Pro Hac Vice pending)*

                                             *Attorneys for Plaintiff*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES