Alexander P. McLaughlin (ISB No. 7977)
Jason J. Blakley (ISB No. 9497)
**GIVENS PURSLEY LLP**
601 West Bannock Street
P.O. Box 2720
Boise, ID 83702
Phone: (208) 388-1200
Fax: (208) 388-1300
alexmclaughlin@givenspursley.com
jasonblakley@givenspursley.com

*Attorneys for Cellco Partnership, d/b/a
Verizon Wireless*

[Additional counsel listed on signature page.]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HENRY ALLEN,<br><br>    Plaintiff,<br><br>v.<br><br>HORIZON TOWER LIMITED, LLC; CELLCO PARTNERSHIP dba VERIZON WIRELESS; DISH WIRELESS L.L.C.; NEW CINGULAR WIRELESS PCS, LLC dba AT&T MOBILITY; and DOES 1 through 10 inclusive;<br><br>    Defendants. | Case No. 1:23-cv-00559-BLW<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

## TABLE OF CONTENTS

                                                                                                                   **Page**

**I.**     **INTRODUCTION** ............................................................................................................. **1**

**II.**    **BACKGROUND** ............................................................................................................... **2**

**III.**   **LEGAL STANDARD** ...................................................................................................... **3**

**IV.**   **ARGUMENT** .................................................................................................................... **3**

         **A.**     Allen Fails to Plead a Title III ADA Claim. .......................................................... **3**

                  **1.**     Defendants Do Not Operate a Place of Public Accommodation. ............... **4**

                  **2.**     Allen Does Not Request a Reasonable Modification. ............................... **6**

         **B.**     Allen's Claims Regarding RF Emissions Conflict with the Communications Act and FCC Regulations. .......................................................... **8**

**V.**    **CONCLUSION** ............................................................................................................... **12**

### I.    INTRODUCTION

The Federal Communications Commission ("FCC") has declared for decades that "the evidence for production of harmful biological effects from low-level [radiofrequency] radiation is ambiguous and unproven."[1] Yet Plaintiff Henry Allen ("Allen") filed this lawsuit claiming that he is disabled because exposure to radiofrequency radiation ("RF") causes various "symptoms," including atrial fibrillation. He contends that Title III of the Americans with Disabilities Act ("ADA") requires Defendants to modify the operation of their electronic communications infrastructure and networks to protect him from that exposure.

That claim fails as a matter of law for two fundamental reasons. First, Allen cannot state a claim under ADA Title III—most obviously because the electronic network that he seeks to modify is not a physical "place of public accommodation," as required under plain Ninth Circuit law. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1113–14 (9th Cir. 2000). Second, Allen attempts to use the ADA to force modifications to an electronic communications network based on claims and assumptions about the safety of RF emissions that conflict with specific, controlling national FCC regulations under the Communications Act of 1934 and are therefore improper as a matter of law. *See Wolf v. City of Millbrae*, No. 21-16649, 2023 WL 2134403, at *1-2 (9th Cir. Feb. 21, 2023); *see also Cohen v. Apple Inc.*, 46 F.4th 1012, 1017 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2513 (2023). As a result, Allen cannot plead any set of facts that would entitle him to relief, and this Court should dismiss the Amended Complaint without leave to amend.

---

[1] FCC, RF Safety FAQ, *What biological effects can be caused by RF energy* (last visited Feb. 27, 2024), https://www.fcc.gov/engineering-technology/electromagnetic-compatibility-division/radio-frequency-safety/faq/rf-safety#Q8 (last visited Feb. 27, 2024); *see also* FCC, Office of Eng'g Tech., *Questions and Answers about Biological Effects and Potential Hazards of Radiofrequency Electromagnetic Fields*, OET BULL. NO. 56, 6-7 (4th ed. Aug. 1999) (same).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**         1

## II.     BACKGROUND

In 2018, the Ada County, Idaho Planning Commission, issued Horizon Tower Limited Partnership-II and Horizon Lower, LLC (collectively, "Horizon") a conditional use permit to construct a personal wireless facility ("Tower") to expand access to personal wireless services in the area. Am. Compl. ¶ 33. Local residents appealed the Planning Commission's approval to the Ada County Board of County Commissioners, which granted the appeal, and denied Horizon's permit. *Id.* ¶ 34. Horizon filed suit in this Court to challenge the County's denial. *Id.* ¶ 37. Based on a settlement between Horizon and Ada County, this Court entered a Consent Order and Judgment where the Court found that both Verizon and AT&T ("TSPs") had a "significant gap in their service in the vicinity of" the proposed Tower, that existing towers were "infeasible or unavailable," and that Horizon was unable to identify an "available, technically feasible" alternative site for the Tower. *Horizon Tower LP-II v. Ada Cnty.*, No. 19-cv-0125 (D. Idaho Nov. 7, 2019), ECF No. 16 at 3-4. Based on those findings, the Court held that Ada County violated Section 332(c)(7)(B)(i)(II) of the Communications Act of 1934 ("Communications Act") when it denied Horizon's conditional use permit because there was a significant gap in wireless service, and Horizon's proposed Tower was the least intrusive means to remedy that gap in service. *Id.* at 5. This Court entered Judgment and ordered the County to grant Horizon's conditional use permit once again. *Id.* On September 17, 2020, this Court also dismissed a collateral attack on the *Horizon Tower* decision from a different local resident in *Barbey v. Ada County*, No. 1:20-cv-00222-SRB (D. Idaho Sept. 17, 2020), ECF No. 23.

With its conditional use permit in hand, Horizon constructed the Tower between 2020 and 2021. Am. Compl. ¶ 38.

Allen alleges that he is disabled because exposure to RF "causes atrial tachyarrhythmias, tinnitus, extreme fatigue, impaired memory and vision, sleep disruption, and flu-like symptoms." Am. Compl. ¶ 1. In 2014, he allegedly experienced unidentified "symptoms" that unidentified "physicians . . . advised" him "arose from exposure to" RF. *Id.* at ¶ 21. In 2017, Allen moved to Eagle, Idaho, located in Ada County, to "reduce his RF exposure" (*Id.* at ¶ 2) and alleges that he invested in numerous RF "mitigation measures" in his home, *id.*, including painting his house with RF blocking paint, using wire screens and RF blocking window tint, and wearing RF-blocking clothing. *Id.* at ¶ 29. Allen claims that in 2021, "[a]fter Defendants opened a wireless transmitting facility" near his house, he experienced "severe symptoms," *id.* at ¶ 2, including atrial fibrillation, which required an ablation procedure. *Id.* at ¶¶ 24-26. Allen alleges that "his health has been directly and adversely affected by the transmitters operating on the tower" and that "[t]he RF emitted by the transmitting equipment on the Tower threatens [his] life." *Id.* ¶¶ 25, 31.

### III.   LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor do "naked assertions" devoid of "further factual enhancement." *Id.* at 662, 678.

### IV.   ARGUMENT

#### A.   Allen Fails to Plead a Title III ADA Claim.

Allen cannot advance his sole claim under Title III of the ADA (42 U.S.C. § 12181 *et seq.*), because he fails to plausibly allege that (1) any Defendant is a private entity that owns, leases, or

operates a place of public accommodation or that (2) any Defendant discriminated against him by failing to make a reasonable modification in "policies, practices, or procedures," 42 U.S.C. § 12182(b)(2)(A)(ii), necessary to accommodate his alleged disability. Allen's failure to plausibly allege either element of his Title III claim requires dismissal. *See Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (setting out the elements of a Title III claim).

### 1. Defendants do not operate a place of public accommodation.

Allen fails to plead that Defendants violated Title III of the ADA because he cannot plausibly allege that any Defendant operates a "place of public accommodation" under governing Ninth Circuit precedent. In a vain attempt to meet the ADA public accommodation requirement, Allen alleges that Defendants "collectively create a physical 'place': the network." Am. Compl. ¶ 9. But an intangible radiofrequency "network" is not a physical place and cannot serve as a "place of public accommodation" within the meaning of Title III of the ADA. *See Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023–24 (N.D. Cal. 2012) ("The Netflix website is not 'an actual physical place' and therefore, under Ninth Circuit law, is not a place of public accommodation."), *aff'd*, 600 F. App'x 508 (9th Cir. 2015); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) ("Facebook operates only in cyberspace, and [] thus is not a 'place of public accommodation' as construed by the Ninth Circuit."); *Ouellette v. Viacom*, 2011 WL 1882780, at *5 (D. Mont., Mar. 31, 2011) ("Ouellette alleges only that Defendants' conduct has impeded his access to certain internet websites — the 'online theater.' Without more, a website does not constitute a physical 'place of public accommodation' as required for a cognizable ADA claim."), *aff'd*, 671 F. App'x 972 (9th Cir. 2016).

Ninth Circuit case law precludes Allen's attempt to characterize an intangible electromagnetic network as a "physical place" under the ADA. In *Weyer*, the Ninth Circuit examined the list of exemplar public accommodations in 42 U.S.C. § 12181(7), "including such a wide variety of things as an inn, a restaurant, a theater, an auditorium, a bakery, a laundromat, a depot, a museum, a zoo, a nursery, a day care center, and a gymnasium." 198 F.3d at 1114. *Weyer* held that "[a]ll the items on this list . . . are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services" meaning "'a public accommodation [under Title III] is a physical place.'" *Id*. at 1115 (quoting *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir. 1997) (en banc)). Allen offers no caselaw or other authority to even suggest that a communications network can be a public accommodation and instead invites the Court "to reconsider the Ninth Circuit's position," confirming the futility of his claim. Am. Compl. ¶ 10.

Grappling with the ADA's "physical place" requirement, Allen vaguely points to Defendants' "towers" and "other equipment." Am. Comp. ¶ 9. But those physical things do not satisfy the ADA requirement for "physical places where goods or services are open to the public, and places where the public gets those goods or services." *Weyer*, 198 F.3d at 1114; *accord Montoya v. City of San Diego*, 434 F. Supp. 3d 830, 844 (S.D. Cal. 2020) ("the facility" must be "open, discriminately to other members of the general public"). Allen does not allege that the towers and other equipment are open to the public. Just the opposite. He complains that those things are located on private property and that if he attempted to access them, he "would be at risk of a claim by Defendants for . . . trespass." Am. Compl. ¶ 53 (emphasis omitted). Allen also fails to allege that he or any other member of the public visits the towers and equipment to obtain goods and services. Nor could he because wireless communications networks cannot be accessed by

visiting the actual towers; the towers themselves are secured behind fences and locked gates to *prevent* access by members of the public.

Faced with the reality that the public purchases wireless communication services at either retail stores or online and that this case has nothing to do with either "place," Allen tries to define an invisible, electromagnetic wireless network as a physical place. But his own Amended Complaint correctly concedes that Ninth Circuit precedent bars any attempt to manufacture a public accommodation. Because Allen can provide no basis for overturning settled law on this issue, the Court should grant Defendants' motion and dismiss Allen's sole claim.

### 2. Allen does not request a reasonable modification.

Allen's claim also fails because he does not plausibly allege a reasonable modification. To establish a violation of Title III, Allen must show that Defendants discriminated against him by failing to make a reasonable modification in "policies, practices, or procedures," 42 U.S.C. § 12182(b)(2)(A)(ii), necessary to accommodate his alleged disability. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). Allen requests that Defendants "utilize their existing technological capabilities to sufficiently reduce the RF exposures at Plaintiff's residence without significantly affecting services to others and while making their services usable by Plaintiff" through "reorienting antennas and/or taking advantage of newer antennas' ability to beamform." Am. Compl. ¶ 51-b.

But that modification is not reasonable as a matter of law. Allen does not request that Defendants make their services accessible to him—he instead requests that Defendants provide a *different* service, which Title III of the ADA does not require. *Weyer*, 198 F.3d at 1115 (holding that the ADA "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided."). That principle has been recognized in courts across the

Ninth Circuit. *Weyer*, 198 F.3d at 1115 ("[A]n insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled."); *Jancik v. Redbox Automated Retail, LLC*, 2014 WL 1920751, at *4 (C.D. Cal., May 14, 2014) ("[T]he ADA requires equal access to places of public accommodation—not equally valuable goods and services available at the public accommodation."); *Tate v. Gonzalez*, 2015 WL 13917955, at *5 (C.D. Cal. Jul. 22, 2015) (holding that Title III of the ADA did not require a used car retailer to install temporary hand controls for test driving or sale of vehicles). Here, Allen requests that Defendants "reduce" services allegedly aimed at his house, Am. Compl. ¶ 51-b, while at the same time alleging that he can access, and is subscribed to, Defendants' services. Am. Compl. ¶ 20. But Defendants are not required to change their *services* to tailor to Allen's individual requests under the ADA.

Any attempt to change the RF signal, which is designed to cover broad swaths of geography, would also run headlong into the ADA. The ADA expressly carves out entities that can show that "making such modifications would fundamentally alter the nature of such . . . services" from liability under the ADA. 42 U.S. Code § 12182(b)(2)(A)(ii). Beaming radio waves to avoid certain areas is inconsistent with Defendants' goal—and Congress's command—to make available "rapid, efficient, Nation-wide, and world-wide wire and radio communication service." 47 U.S.C. § 151 *et seq*. As Congress acknowledged, Defendants cannot tailor their national network to address individual needs, which is why Congress granted the FCC comprehensive powers over radio communications. *Cohen v. Apple Inc.*, 46 F.4th 1012, 1017–23 (9th Cir. 2022); *see also Wolf*, 2023 WL 2134403, at *1 (rejecting "Wolf's accommodations that are inconsistent with" federal communications law). Allen's requested accommodation is counter to Congressional intent, unreasonable, and not required under the ADA. His claim should fail.

### B. Allen's Claims Regarding RF Emissions Conflict with the Communications Act and FCC Regulations.

Allen's ADA claim also fails as a matter of law because it conflicts with the Communications Act, which gave the FCC "comprehensive powers" over all types of radio communications. For decades, the FCC has exercised federal primacy over the technical aspects of those communications. *Cohen*, 46 F.4th at 1017-18 (describing statutory background of the Communications Act); *Farina v. Nokia Inc.*, 625 F.3d 97, 106 (3d Cir. 2010) (Congress granted the FCC exclusive jurisdiction to regulate the safety of exposure to RF emissions and "over the technical aspects of radio communications."). "The 1934 [Communications] Act grants broad authority to the FCC to promulgate regulations that strike a balance among overlapping and potentially conflicting policies." *Cohen*, 46 F.4th at 1029. The FCC has explained that "'[a] balance must be achieved between serving the public interest by fulfilling its needs for communications services and adequately protecting the populace against potentially adverse biological effects that may be attributable to excessive RF radiation.'" *Id.* (quoting 1979 Notice of Inquiry, 72 F.C.C.2d at 489, ¶ 17).

At Congress's direction in the Telecommunications Act of 1996 ("TCA"), which amended the Communications Act of 1934, the FCC issued RF exposure regulations (47 C.F.R. § 1.1310). The FCC later explained that its regulations "'provided a proper balance between the need to protect the public and workers from exposure to excessive RF electromagnetic fields and the need to allow communications services to readily address growing marketplace demands.'" *Id.* at 1022 (quoting In re Reassessment of Federal Communications Commission Radiofrequency Exposure Limits and Policies, 28 FCC Rcd. 3,498, 3,582, ¶ 236 (Mar. 29, 2013)); *see also* Pub. L. No. 104-104, § 704(b), 101 Stat. 56, 152 (ordering the FCC to "prescribe and make effective rules regarding the environmental effects of radio frequency emissions."). Today, those regulations

remain in place and are "are generally applicable to all facilities, operations and transmitters regulated by the [FCC]," including the Tower and other equipment at issue. 47 C.F.R. § 1.1307(b)(1).

Section 332(c)(7)(B)(iv) of the Communications Act provides an example of congressional intent to make FCC regulation of RF emissions trump competing concerns. Generally, Congress preserved local government authority over the siting of personal wireless facilities, 47 U.S.C. § 332(c)(7)(A), subject to substantive and procedural limits, 47 U.S.C. § 332(c)(7)(B). In Section 332(c)(7)(B)(iv), Congress limited local governments from impeding the siting and construction of cell towers based on alleged health hazards from RF emissions that comply with FCC regulations. *See* 47 U.S.C. § 332(c)(7)(B)(iv) ("[N]o state or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects[2] of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions").

It is beyond question that zoning challenges and state tort suits based on alleged health effects of RF emissions are preempted by the Communications Act and FCC regulations. "By delegating the task of setting RF-emissions levels to the FCC, Congress authorized the federal government . . . to strike the proper balance between protecting the public from RF-emissions exposure and promoting a robust telecommunications infrastructure." *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319-20 (6th Cir. 2017) (affirming dismissal of claims based on

---

[2] Under 47 U.S.C. § 332(c)(7)(B)(iv), environmental effects include "biological and human health effects." *Wolf v. City of Millbrae*, No. 21-cv-00967-PJH, 2021 WL 3727072, at *4 (N.D. Cal. Aug. 23, 2021) (citing *ColfaxNet LLC v. City of Colfax*, No. 19-cv-02167 WBS CKD, 2020 WL 6544494, at *7 (E.D. Cal. Nov. 6, 2020) (citing *Freeman v. Burlington Broad., Inc.*, 204 F.3d 311, 325 (2d. Cir. 2000); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 n.3 (2d Cir. 1999)).

alleged health effects from cell tower RF emissions). As the Ninth Circuit has explained, consistent with many other decisions,[3] "[a]llowing state tort law to prescribe lower levels of RF radiation than the levels prescribed by the FCC would interfere with the nationwide uniformity of regulation that is the aim of the Act, and would render the FCC's statutorily mandated balancing essentially meaningless." *Cohen*, 46 F. 4th at 1030-31.

Allen attempts a backdoor challenge to the FCC's exclusive authority and its specific regulations governing communications equipment and RF emissions by arguing that unlike state zoning or tort law (which is plainly preempted), the federal ADA is "co-equal" with the Communications Act and "stand[s] on equal stead with the FCC's regulations." Am. Compl. ¶ 51 at n.11. But that fails because Allen's theory violates the doctrine that "a specific statute will not be controlled or nullified by a general one." *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1160 (9th Cir. 2020); *see also Andrews v. Sirius XM Radio, Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019) ("commonplace of statutory construction that the specific governs the general") (citation omitted). Where a general and specific statute exist side-by-side, the "terms of the specific authorization must be complied with, to avoid the superfluity of a specific provision that is swallowed by the general one." *Andrews*, 932 F. 3d at 1263.

---

[3] *See Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation*, 11 FCC Rcd 15122, 15123 (1996); *see also generally Broyde v. Gotham Tower, Inc.*, 13 F.3d 994 (6th Cir. 1994); *Farina v. Nokia Inc.*, 625 F.3d 97, 106 (3d Cir. 2010); *Sw. Bell Wireless, Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs*, 199 F.3d 1185 (10th Cir. 1999); *In re Freeman*, 975 F. Supp. 570 (D. Vt. 1997), *aff'd as modified sub nom. Freeman v. Burlington Broad., Inc.*, 204 F.3d 311 (2d Cir. 2000); *Howington v. SpectraSite Commc'ns, Inc.*, No. CIV. 05-658-BH-C, 2006 WL 335580 (S.D. Ala. Feb. 13, 2006); *Merrick Gables Ass'n v. Town of Hempstead*, 691 F. Supp. 2d 355 (E.D.N.Y. 2010); *Still v. Michaels*, 791 F. Supp. 248 (D. Ariz. 1992); *Fontana v. Apple Inc.*, 321 F. Supp. 3d 850 (M.D. Tenn. 2018); *Kaspers v. Verizon Wireless Servs., LLC*, No. 20-CV-02142-LMM, 2021 WL 2193992 (N.D. Ga. Jan. 19, 2021), *reconsideration denied*, No. 20-CV-02142-LMM, 2021 WL 2193584 (N.D. Ga. May 11, 2021).

Indeed, the Ninth Circuit recently confirmed, in a case involving wireless facilities and alleged health effects from RF emissions, that where general ADA accommodations would be in direct conflict with the Communications Act and FCC regulations, the Communications Act and FCC regulations trump the ADA. *Wolf*, 2023 WL 2134403, at *1 ("Where such direct conflict exists, we do not require the City to make the 'Hobson's choice' of whether to violate the ADA or the TCA."); *cf. Save Our Summers v. Wash. State Dep't of Ecology*, 132 F. Supp. 2d 896, 902 (E.D. Wash. 2000) (concluding that Congressional scheme under Clean Air Act foreclosed plaintiff's claim under the ADA to address air pollution).

Here, complying with the ADA would require Defendants to ignore FCC regulations and would permit the regulation of RF emissions based on alleged individualized health effects, despite Congress's intent to prevent such piecemeal regulation and the FCC's determination that RF emissions within defined parameters are safe. 47 C.F.R. § 1.1307(b)(4)(ii) ("No mitigation actions are required when the RF source does not cause continuous or source-based time-averaged exposure in excess of the general population limit in § 1.1310 of this part."). Allen does not allege that any of the equipment at issue violates the FCC exposure regulations. For the same reason that Allen cannot state a tort claim for alleged harm from the Tower and RF emissions, Allen cannot force this Court to contradict the FCC.

Permitting every person who claims that RF emissions from wireless facilities near them are negatively impacting their health and requesting a specialized accommodation would be a textbook example of why other laws, including the ADA, must give way to permit the functioning of a uniform wireless communications network as intended by Congress. If Allen's theory were accepted, Courts would be put in a position to second guess the FCC's regulations, and every wireless facility would risk having to be adjusted, moved, or shut down in response to similar

claims. Congress gave the FCC exclusive authority to balance public health and safety against the national goal to promote an advanced, efficient wireless communications network. The FCC exercised that authority. Allen's claims based on FCC-compliant RF emissions are inconsistent with that authority and would improperly have the Court second guess Congress's and the FCC's balancing decision. Allen's claim is barred and should be dismissed. C*ohen* 46 F.4th at 1017; *see also Robbins*, 854 F.3d at 319–20; *Wolf*, 2023 WL 2134403, at *2.

## V.  CONCLUSION

Defendants respectfully request that the Court dismiss Allen's Amended Complaint with prejudice.

DATED this 15th day of March, 2024.                Respectfully submitted.

**CLARK WARDLE LLP**

*/s/   Joshua J. Leonard*
Joshua J. Leonard
251 E. Front Street, Suite 310
P.O. Box 639
Boise, ID 83701
Phone: (208) 388-3868
Fax: (208) 388-1001
jleonard@clarkwardle.com

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

T. Scott Thompson (*pro hac vice forthcoming*)
Todd Rosenbaum (*pro hac vice forthcoming*)
555 12th Street NW, Suite 1100
Washington, DC 20004
Phone: (202) 434-7300
Fax: (202) 434-7400
sthompson@mintz.com
tfrosenbaum@mintz.com

*Attorneys for Defendant Horizon Tower Limited, LLC*

**GIVENS PURSLEY LLP**

*/s/ Alexander P. McLaughlin*
Alexander P. McLaughlin
Jason J. Blakley

**ALSTON & BIRD LLP**

Scott A. Elder (*pro hac vice pending*)
David Venderbush (*pro hac vice pending*)
Jean Richmann (*pro hac vice pending*)
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Phone: (404) 881-7000
scott.elder@alston.com
david.venderbush@alston.com
jean.richmann@alston.com

*Attorneys for Defendant Cellco Partnership dba Verizon Wireless*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)         12**

**CLARK WARDLE LLP**
*/s/   Joshua J. Leonard*
Joshua J. Leonard
251 E. Front Street, Suite 310
P.O. Box 639
Boise, ID 83701
Phone: (208) 388-3868
Fax: (208) 388-1001
jleonard@clarkwardle.com

**AT&T SERVICES, INC.**

Raymond P. Bolaños (*pro hac vice forthcoming*)
430 Bush Street, 6th Floor
San Francisco, CA 93108
Phone: (415) 694-0640
Fax: (415) 543-0418
rb2659@att.com

*Attorneys for Defendant New Cingular Wireless PCS, LLC dba AT&T Mobility*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 15th day of March, 2024, I filed the foregoing document electronically through the CM/ECF System, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Mauricio Cardona
THE DAVILLIER LAW GROUP, LLC
mcardona@davillierlawgroup.com
*Attorneys for Plaintiff*

W. Scott McCollough
MCCOLLOUGH LAW FIRM, P.C.
wsmc@dotlaw.biz
*Attorneys for Plaintiff*

Carsten A. Peterson
Lynnette M. Davis
HAWLEY TROXELL ENNIS &
 HAWLEY LLP
cpeterson@hawleytroxell.com
ldavis@hawleytroxell.com
*Attorneys for DISH Wireless, LLC*

AND I FURTHER CERTIFY that on such date, I served the foregoing on the following non-CM/ECF registered participants in the manner indicated:

NONE.

>      */s/ Alexander P. McLaughlin*
>           Alexander P. McLaughlin