UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HENRY ALLEN,<br><br>Plaintiff,<br><br>v.<br><br>HORIZON TOWER LIMITED, LLC;<br>CELLCO PARTNERSHIP dba<br>VERIZON WIRELESS; DISH<br>WIRELESS L.L.C.; NEW<br>CINGULAR WIRELESS PCS, LLC<br>dba AT&T MOBILITY; and DOES 1<br>THROUGH 10 inclusive,<br><br>Defendants. | Case No. 1:23-cv-00559-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Before the Court are Horizon Tower Limited, LLC's, Cellco Partnership's, and New Cingular Wireless PCS's joint motion to dismiss (Dkt. 14) and DISH Wireless LLC's motion to dismiss (Dkt. 18). For the reasons described below the court will grant both motions.

## BACKGROUND

Mr. Allen alleges that exposure to radiofrequency radiation, sometimes referred to as "RF" radiation, aggravates his disability by causing a variety of

symptoms including atrial tachyarrhythmias, tinnitus, extreme fatigue, and sleep disruption. *Am. Complaint* at ¶ 1, Dkt. 13. In 2017, he moved to Eagle, Idaho to reduce his exposure to RF and alleviate these symptoms. *Id.* at ¶ 22. A few years after Mr. Allen moved to Eagle, the defendants opened a wireless transmitting facility near Mr. Allen's home.[1] *Id.* at ¶ 3. These facilities use RF to provide cell service and, as such, produce RF radiation. *Id.* ¶ 16. Mr. Allen's symptoms worsened when the tower began operation in 2021. *Id.* at ¶ 24. Despite his attempts to mitigate the effects of the radiation through self-help, he continues to suffer symptoms. *Id.* at ¶ 29. When Mr. Allen reached out to the defendants to see if any accommodation was possible to minimize the RF waves directed as his house, the defendants refused to engage in "a good faith interactive process." *Id.* at ¶ 28.

In December 2023, Mr. Allen filed this lawsuit against the defendants alleging a violation of Title III of the Americans with Disabilities Act and requesting the defendants move the tower or, if not feasible, take other measures to minimize Mr. Allen's symptoms. Three defendants—Cellco, New Cingular, and Horizon—moved to dismiss for failure to state a claim. The fourth defendant,

---

[1] More specifically, the site and cell tower are owned by Horizon, who then leases space to the other defendants—telecom service providers. *Am. Complaint* at ¶ 9, Dkt. 13. One of these service providers, DISH, has a lease but has yet to install any equipment or begin services. *Id.* at ¶ 16 n.4.

DISH, joins the other defendants' motion and moves to dismiss the claim against it for a lack of ripeness. Mr. Allen opposes both motions.

## LEGAL STANDARD

Both motions are brought pursuant to Rule 12(b)(6), however, "[l]ike other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1) even if improperly identified by the moving party as brought under Rule 12(b)(6)." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); s*ee also Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). As such, DISH's motion, although brought pursuant to 12(b)(6), will be construed as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Where both jurisdictional and merits grounds are presented, the Court looks to the jurisdictional issues first. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).

A complaint must be dismissed on a Rule 12(b)(1) motion if a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A jurisdictional attack on subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**MEMORANDUM DECISION AND ORDER - 3**

In contrast, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* DISH's motion questioning the sufficiency of the allegations in the Amended Complaint presents a facial challenge. When evaluating a facial challenge, the court must take all the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020).

Likewise, on a Rule 12(b)(6) motion, the Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[T]he court accepts the facts alleged in the Complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when it pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.

## ANALYSIS

### A.    DISH's Motion

DISH argues that Mr. Allen's claim against it is not ripe because it has not installed any equipment at the site and is not emitting any of the RF waves that are aggravating Mr. Allen's disability. Mr. Allen argues his claim is ripe, but contends that even if the claim against DISH is not ripe, DISH must be joined as a necessary party. The Court will first address the question of ripeness before turning to Mr. Allen's arguments related to joinder.

### 1.  Ripeness

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (internal citation omitted). Put simply, ripeness is "a question of timing." *Blanchette v. Connecticut General Ins. Corps.*, 419 U.S. 102, 140 (1974). Ripeness has a constitutional and a prudential component and the plaintiff must establish both components are satisfied to proceed with their claim. *Colwell v. Department of Health and Human Services*, 558 F.3d 1112, 1121 (9th Cir. 2009).

"[T]he constitutional competent of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inv. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003). Accordingly, a plaintiff must show the

"invasion of a legally protected interest which is (a) concrete and particularized; and (2) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted). "Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy." *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (internal quotation marks and citations omitted). Here, DISH challenges only whether Mr. Allen has properly alleged an actual or imminent injury.

Mr. Allen clearly has not alleged an actual injury. DISH has yet to install equipment and begin operation of the site, so no injury has yet to occur. *See Montana Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) ("Because the alleged injury has not yet occurred, [the plaintiff] is not suing over an 'actual' injury."). A claim may still be constitutionally ripe where injury is imminent. *Id*. An injury is imminent "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

Mr. Allen alleges he will suffer imminent injury because DISH's counsel stated in a letter to him that it "will install the DISH site in the future" and "DISH

has no future obligation to accommodate Mr. Allen's alleged disability." *Am.*

*Complaint* at ¶ 16 n.4, Dkt. 13. He argues this letter coupled with the harm he has

suffered as a result of RF radiation from the other telecom service providers' sites,

creates a substantial risk of future injury. DISH, on the other hand, points out that

Mr. Allen has not made any allegations about the expected timeline for installation

of the DISH site or included any information about the plans for the site. It argues

that this renders the injury uncertain, and thus his claim unripe, because the Court

has no idea when the site will be installed, what the plans are for the site, or how

those plans might affect Mr. Allen's disability. The Court agrees.

Its not clear from the Amended Complaint that Mr. Allen's injury is

"certainly impeding" or even that there is a "substantial risk" of injury. For one,

Mr. Allen alleges only that the site will be installed sometime in the future. This

bare allegation is insufficient to satisfy the injury in fact requirement. *See Lujan*,

504 U.S. at 565 ("Such 'some day' intentions—without any description of concrete

plans, or indeed even any specific of *when* the some day will be—do not support a

finding of the 'actual or imminent' injury that our cases require."). While Mr.

Allen is, of course, limited to the information in the public record at this time, he

must allege additional facts that support the inference that the installation is

certainly impending. DISH's statement that the site will be installed in the future,

without more, does not support that inference.[2]

Similarly, Mr. Allen has not alleged sufficient facts to support the inference
that the DISH site will aggravate his disability and require accommodation. He
relies on the fact that operation of the other telecom providers' sites have worsened
his symptoms as support for the inference that DISH's site will also worsen his
symptoms. He, however, does not draw any connection between DISH's plans and
the other sites beyond the use of RF. Mr. Allen's complaint makes clear that there
are technologies that may minimize the effects of the RF radiation. *Am. Complaint*
at ¶ 51, Dkt. 13. Presumably, there is a reason Mr. Allen believes that this
technology will not be used at the DISH site, however, the basis for that belief is
not set forth in the Amended Complaint. At bottom, Mr. Allen must allege the facts
that underly his belief that the harm from the DISH site is imminent and that
support the inferences required to find his claim is ripe. Ultimately, the burden is
on the plaintiff to establish ripeness and Mr. Allen has failed to establish
constitutional ripeness. As such, Mr. Allen's claim against DISH is not ripe and the
Court will not address the prudential ripeness prong of the ripeness analysis.

---

[2] The cases cited by DISH are only marginally helpful as they dealt with ripeness at
summary judgment, not a motion to dismiss. *See Paraquad, Inc. v. St. Louis Housing Authority*,
259 F.3d 956, 959 (8th Cir. 2001); *Noel v. City of Seattle*, No. C05-1367-MJB, 2006 WL
2794305, at *6 (W.D. Wash. Sept. 27, 2006).

### 2. Joinder

Mr. Allen, briefly, argues that DISH is a necessary party pursuant to Federal Rule of Civil Procedure 19(a)(1) or, at least, may be joined on a permissive basis under Federal Rule of Civil Procedure 20(a)(2). Mr. Allen does not cite to any case law to support this position, nor does he apply the facts at issue to the relevant standard. Instead, he argues that the contractual relationship between Horizon as the owner of the cell tower and DISH as a lessee requires DISH to be joined.

"Under Rule 19(a)(1), a party is deemed 'necessary' if complete relief cannot be granted in its absence." *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). This analysis requires asking "whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Id.* The mere fact that there is a contractual relationship between the parties does not establish that no meaningful relief can be fashioned between the other defendants without DISH's presence in the lawsuit. This is not "an action to set aside a contract" that would necessitate joinder on this basis alone. *Id.* at 881. Further, Mr. Allen has not suggested that any "term of the contract" between Horizon and DISH "requires discrimination on the basis of disability" that would similarly require joining DISH based on its contract with Horizon. *Id*. As such, there does not appear to be any basis to find DISH is a

necessary party.

Mr. Allen similarly has not demonstrated that DISH should be joined under Rule 20. Rule 20(a)(2) provides that a defendant may be joined if any "right to relief is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "[P]ermissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977). Again, the existence of a contract, alone, does not satisfy this standard.[3] As such, because the claim against DISH it unripe, the Court will dismiss Mr. Allen's claim against it without prejudice. *See Hampton v. Pacific Investment Management Company, LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction. . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.").

## B.   Joint Motion

---

[3] This is not to say that DISH could not be joined under either theory, only that Mr. Allen's argument is insufficient to require that DISH be joined at this time.

The defendants move to dismiss Mr. Allen's Complaint for failure to state a claim based on two theories. First, the defendants argue Mr. Allen has failed to state a legally cognizable theory under the ADA and, second, that his claims are preempted by the Communications Act and FCC Regulations. The Court will dismiss Mr. Allen's claim for failure to state a claim, so it will not address the defendants' other arguments.

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under the ADA, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. *Arizona ex rel. Goddard v. Harkins Amusement Enter. Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

The defendants first argue that Mr. Allen cannot state a claim under the ADA because the defendants do not operate a place of public accommodation. "Whether a particular facility is a 'public accommodation' under the ADA is a

question of law." *Jankey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 2d 1174, 1178 (C.D. Cal. 1998). The ADA provides "an extensive list of public accommodations," that includes places such as "an inn, a restaurant, a theater, an auditorium, a bakery, a laundromat, a depot, a museum, a zoo, a nursery, a day care center, and a gymnasium." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (citing 42 U.S.C. § 12181(7)). "All the items [in § 12181(7)], however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services." *Id.* The presence of a physical location, then, is necessary to qualify as "a place of public accommodation."

That said, in some circumstances a plaintiff may bring an ADA claim even where they do not physically access the place of public accommodation. The Ninth Circuit has recognized that the ADA "applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation." *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019). This means a plaintiff may allege an ADA violation for unequal access to a 'service' of a public accommodation if there is a sufficient "'nexus' between the challenged service and the place of public accommodation." *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 952 (N.D. Cal. 2006); *Robles*, 913 F.3d at 905 ("This nexus

between Domino's website and app and physical restaurants—which Domino's does not contest—is critical to our analysis."). Even under this more expansive understanding of the ADA, a place of public accommodation requires the existence of a physical place.

Mr. Allen claims he has properly alleged that the defendants own, lease, or operate a place of public accommodation based on two theories. First, he alleges "there are physical structures and facilities without which no services could be provided." *Am. Complaint* at ¶ 9, Dkt. 13. Second, he alleges the "[d]efendants collectively create a physical 'place': the network, over which the [telecom service providers] provide their services [and] [c]ustomers physically access." *Id.* Even taking all the factual allegations in the Amended Complaint as true, neither theory establishes that the defendants own, lease, or operate a place of public accommodation.

First, the existence of a physical place related to the operation of the cellular network—the cell tower and equipment—does not necessarily make the service the "service of a place of public accommodation." The physical location must itself be a public accommodation and the service must have a nexus to that place of public accommodation. *Robles*, 913 F.3d at 905. Simply pointing to a physical structure that relates to the provision of a service, without alleging that the physical place is

itself a place of accommodation is insufficient. To qualify as a place of public accommodation under the ADA, an establishment must in fact be open to the public. *Jankey*, 212 F.3d at 1161. That is not the case here. Indeed, Mr. Allen concedes that the cell tower and equipment are not open to public, thus, they cannot be a place of public accommodation. *Response* at 8, Dkt. 30 ("The public is unable to walk into the premise holding the tower and equipment.").

Mr. Allen nonetheless argues that *Robles* precludes such a conclusion. Not so. In *Robles*, the Ninth Circuit held that the "inaccessibility of Domino's website and app impeded access to the goods and services" of place of public accommodation—the physical franchise locations. *Robles*, 913 F.3d at 905. A prerequisite of this conclusion is, of course, the existence of a place of public accommodation. Indeed, access to "services *of* a place of public accommodation" first requires a place of public accommodation. *Id.*  Because the cell tower and equipment are not a place of public accommodation, there can be no nexus between the service and any public accommodation that supports an ADA claim.

Mr. Allen's second theory fares no better. He alleges that the network created by the defendants is a physical place and that customers use their own equipment, such as a cellphone, to access the physical network. *Am. Complaint* at ¶ 9, Dkt. 13. Despite his repeated use of the word physical, he has not alleged that

the cellular network is a physical place within the understanding of the ADA. Nor

can he. Mr. Allen "does not have to travel to some physical place, open to the

public, in order to experience the benefits of the defendants' [services.]" *Torres v.*

*AT&T Broadband, LLC*, 158 F. Supp. 2d 1035, 1038 (N.D. Cal. 2001) (holding

cable system was not a place of public accommodation). He connects to the

network "using [his] own equipment" from his home, car, or anywhere he chooses.

*Am. Complaint* at ¶ 9, Dkt. 13.

Courts in the Ninth Circuit have rejected similar arguments. Most similarly,

the Court in *Torres* held that a digital cable network was not a place of public

accommodation under the ADA. *Torres*, 158 F. 2d at 1038. The same is true of

Courts evaluating ADA claims against companies who provide services

exclusively through the internet. *See Cullen v. Netflix*, 880 F. Supp. 2d 1027, 1026

(N.D. Cal. 2012) ("The Netflix website is not physical place."); *Young v. Facebook*

*Inc.*, 790 F. Supp. 1110, 1115 (N.D. Cal. 2011) ("Facebook operates only in

cyberspace, and thus is not a 'place of public accommodation' as construed by the

Ninth Circuit.").

Although Mr. Allen's claim presents a slightly different context as it is based

upon access to a cellular network rather than a website, internet network, or cable

network, he cannot escape the reasoning underlying these opinions. One cannot

physically access the cellular network in much the same way one cannot physically access a website. The public connects to both via a device and need not enter any physical space as they would when entering a restaurant or movie theater.[4] To conclude otherwise would run afoul of the Ninth Circuit's reasoning in *Weyer*. Importantly, the *Weyer* Court noted that everywhere listed as a place of public accommodation "ha[s] something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services." *Weyer*, 198 F.3d at 1114. That is not the case with the cellular network. It is not an actual, physical place. As such, the Court will dismiss Mr. Allen's ADA claim for failure to state a claim.

### C.    Leave to Amend

Regardless of if a party makes a request, "[a] district court should grant leave to amend. . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (internal quotations omitted). The Court finds that

---

[4] To the extent Mr. Allen requests this Court depart from Ninth Circuit precedent and adopt the more extensive view of place of public accommodation of other circuits, this Court will decline to do so. *Am. Complaint* at ¶ 10, Dkt. 13 ("If and to the extent the Court disagrees and determines that wireless network access is akin to a website, it is appropriate for the courts to reconsider the Ninth's Circuit position). That is an argument he must make on appeal.

amendment here would be futile because Mr. Allen cannot state a claim under the ADA as a matter of law. *See Torres*, 158 F. Supp. 2d at 1038 (dismissing claim with prejudice). No additional facts can change that the defendants do not own, lease, or operate a place of public accommodation. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."). As such, the Court will dismiss Mr. Allen's claim without leave to amend.

## ORDER

**IT IS ORDERED that:**

1.     DISH's Motion to Dismiss (Dkt. 18) is **GRANTED**. Mr. Allen's claim against DISH is dismissed without prejudice.

2.     The Defendants' Joint Motion to Dismiss (Dkt. 14) is **GRANTED** and Mr. Allen's claims against the remaining defendants are dismissed with prejudice.

DATED: June 20, 2024

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 17**